## HOWELL vs. BIDDLECOM.

Upon the sale of a horse to the plaintiff, by the defendant, the horse was represented and warranted by the latter to be sound, at that time, although the fact was disclosed that there had been a previous unsoundness. In an action to recover damages for a fraudulent warranty, the referee found that the horse appeared sound at the time of the sale, but that he was in fact unsound, at that time, and the unsoundness afterwards became more developed, and was exhibited by occasional lameness, so as seriously to impair the value of the horse. *Held* that if the defendant told the plaintiff the whole truth, in regard to the condition of the horse, he was not liable for fraud on the sale.

If a seller knows of a defect in his goods which the buyer does not know, and if he had known, would not have bought the goods, and the seller is merely silent, his silence, although a moral, is not a legal, fraud.

The common law does not oblige a seller to disclose all that he knows which lessens the value of the property that he would sell.

He may be silent, leaving the purchaser to inquire and examine for himself, or to require a warranty. But if, by acts or words, he leads the buyer astray, inducing him to suppose that he buys with warranty, or otherwise preventing his examination or inquiry, this becomes a fraud of which the law will take cognizance.

Where, upon the purchase of a horse by the plaintiff, of the defendant, the former did not trust to the assertions of the latter, but took a man of skill with him, to examine the horse, and it was after such examination, and after the defects known to the seller had been disclosed, that the sale was consummated; *Held*, that under these circumstances, the purchaser had no remedy for alleged fraud upon the sale.

Where the gravamen of the action was the fraudulent concealment from the plaintiff of the condition of a horse purchased by him of the defendant; *Held*, that want of knowledge in the plaintiff being the theory to be proved, if he was bound to prove the negative, it was competent for the defendant to prove, under a general denial in the answer, the affirmative of the proposition.

So much depends on the appearance and conduct of a witness, before a referee, that it is never safe to interfere with a finding on a question of fact, unless it is so flagrantly unjust as to show partiality, corruption or incompetency, on the part of the referee. *Per* MULLIN, J.

APPEAL by the plaintiff from a judgment entered upon the report of a referee.

The action was brought to recover damages for an alleged fraudulent warranty on the sale of a horse. The

answer was a general denial. The action was referred to a referee, who reported the following facts :

Previous to about the 2d day of October, 1858, the defendant was the owner of a certain horse, known as the "Biddlecom Farmer." That the defendant purchased the said horse of one Joshua Loomis in the month of March, 1855, and had kept and used him as a seed horse from that time down to the 2d day of October, 1858. That the said horse was lame in the left fore foot, leg or shoulder, at the time he was so purchased by the defendant, and on account of such lameness—which was denied by said Loomis—the defendant paid $50 less for the said horse than he had agreed to pay, upon the supposition that he was not seriously lame, but was perfectly sound. That the said horse apparently soon recovered from the said lameness. That said horse was lame two or three times in the same foot, leg or shoulder, while the defendant owned and used him, but only for a day or two at a time. The cause or occasion of such lameness the evidence does not disclose. At or about the 2d day of October, 1858, the said horse was not lame, but was to all appearance, and as far as could be discovered by examination, perfectly sound. On the last day of September, and the first and second of October, 1858, the plaintiff and defendant negotiated for the sale of the said horse by the defendant to the plaintiff. The said negotiations, on the 2d day of October, 1858, resulted in the sale and delivery of the said horse by the defendant to the plaintiff at the agreed price of $500, which was then secured to be paid by the plaintiff to the defendant. During the said negotiation for such sale and delivery, the plaintiff was informed by the defendant of the lameness of the horse while the defendant owned him, and of all the facts and circumstances thereof. The defendant also informed the plaintiff that he considered the said horse sound at that time.

The referee further found that no fraud or deceit was

Howell *v.* Biddlecom.

practised by the defendant, or false or fraudulent representations made by him to the plaintiff, during the negotiations for said sale or delivery, and the plaintiff did not rely on any statement or representation made by the defendant upon such sale, as to the soundness of said horse. That said horse was not sound at the time of such sale and delivery to the plaintiff, but had a defect or weakness in the left fore foot, leg or shoulder, which since that time had become more developed, and was exhibited by occasional lameness, so as to seriously impair the value of said horse.

From the foregoing facts the referee found, as legal conclusions, that the plaintiff was not entitled to have or maintain this action against the defendant. Judgment was, therefore, ordered for the defendant, with costs, and was entered, accordingly.

*Brown & Beach,* for the appellant.

*Starbuck & Sawyer,* for the respondent.

*By the Court,* MULLIN, J. If the facts in this case have been correctly found, it is impossible to reverse this judgment. All the facts necessary to establish good faith in this sale are found, and nothing on which the charge of fraud can be predicated. It only remains to inquire whether the facts as found are supported by the evidence.

There is no controversy as to the terms of the sale, nor, but that, on several occasions, before the sale, the defendant represented the horse as sound. On the plaintiff's evidence, a warranty is clearly made out. The defendant, however, swears that before the sale was completed he told the plaintiff that the horse was lame when he bought him, and had been lame on two or three occasions subsequent thereto. Washburn and Talcott swear to the same fact. The plaintiff denies that the defendant ever told

him any such thing; and he is, to some extent, corroborated by persons who heard the representations, the night before the sale was completed. But there is no such preponderance of evidence as will justify us in saying that the finding is against the evidence.

We must assume, then, that the defendant did disclose to the plaintiff that the horse was lame when he bought him, and had been lame on two or three occasions since. But we must also assume that the defendant represented the horse to be sound, at the time the trade was made. The plaintiff, then, had notice of a previous lameness, and a warranty of his then soundness. The referee finds that the horse appeared sound at the time of the trade, but that he was in fact unsound, at the time of the sale, which unsoundness afterwards became more developed, and is exhibited by occasional lameness, so as seriously to impair the value of the horse. The horse was represented and warranted sound, was in fact unsound, and the fact was disclosed that there had been a previous unsoundness.

If the defendant told the plaintiff the whole truth, in regard to the condition of the horse, he is not liable for fraud on the sale. The plaintiff's counsel thinks that the defendant did not disclose to the plaintiff all the occasions on which the horse had been lame, while in his possession; and he refers to the evidence of Oatman, in support of his proposition. But Oatman says he never saw him lame but once, in the defendant's possession. He had just got him, and he did not show it much, then. It was for this that the defendant arbitrated with his vendor, and obtained an award of $50. This, the defendant says was disclosed to the plaintiff, and of course no complaint can be made of want of notice of that lameness.

We are also referred to the evidence of the boy Farrel, to show that there were some six other occasions on which the horse had been lame, which were not disclosed to the plaintiff. From the history this lad gives of himself, I

Howell *v.* Biddlecom.

should not feel myself called upon to disturb the report of a referee who had omitted to give weight to his evidence. Three instances, it seems to me, are proved so as to authorize us to interfere with the judgment.

We are also referred to the evidence of Peter Yendes, for another omission to disclose an instance of lameness. But so far from this instance being omitted, it is one of those testified to by the defendant and one or two other witnesses, and of which the defendant says he informed the plaintiff.

The plaintiff's counsel insists that although it may be true that the defendant disclosed the lameness of the horse at Adams' and elsewhere, before the completion of the trade, yet his representation of the perfect soundness, the night before the sale was completed, was a waiver of the former representations, and he must be held bound by those last made. If this action was on this warranty, only, there would be some force in the suggestion. But the gravamen of the action is fraud, and fraud implies knowledge and concealment of the defects. These facts could not be found after it was shown that they had been fully disclosed.

There is a popular notion abroad, that any concealment of known defects in an article sold is fraudulent, and subjects the vendor to damages. But such is not the law. *Parsons*, in his work on *Contracts*, (*vol.* 1, *p.* 461,) says: "If a seller knows of a defect in his goods which the buyer does not know, and if he had known would not have bought the goods, and the seller is silent, and only silent, his silence is nevertheless a moral fraud, and ought, perhaps, on moral grounds, to avoid the transaction. But this moral fraud has not yet grown into a legal fraud. In cases of this kind there may be circumstances which cause this moral fraud to be a legal fraud, and give to the buyer his action on this implied warranty, or on the direct; and if the seller be not silent, but produce the sale by means

of false representations, then the rule of *caveat emptor* does not apply, and the seller is answerable for his fraud. But the weight of authority requires that this should be active fraud. The common law does not oblige a seller to disclose all that he knows which lessens the value of the property that he would sell. He may be silent, leaving the purchaser to inquire and examine for himself, or to require a warranty. He may be silent and be safe, but if he be more than silent—if by acts, and certainly if by words, he leads the buyer astray, inducing him to suppose that he buys with warranty, or otherwise preventing his examination or inquiry—this becomes a fraud of which the law will take cognizance. * * The seller may let the buyer cheat himself, *ad libitum*, but must not actually assist him in cheating himself."

I am unable to discover wherein the defendant misled the plaintiff, except it may be in asseverating so often that the horse was sound, being himself well acquainted with horses—much better than the plaintiff. But the plaintiff did not trust to the assertions of the defendant; he took a man of skill with him, to examine the horse, and it was after such examination, and after the defects known to the defendant had been disclosed, that the sale was consummated. The plaintiff, under such circumstances, has no remedy.

I do not discover any error in the rulings of the referee which could operate to the prejudice of the plaintiff. Some of the evidence received by him under objection was illegal; but it was so immaterial that it could work no prejudice to the party. It was objected to the evidence on the part of the defendant showing that he had communicated the condition of the horse to the plaintiff, that it was not within the issue made by the answer. By this, I suppose, is meant that the fact thus proved was not alleged in the answer. If it was not admissible under the general denial, the objection was valid, and the evidence

Howell *v.* Biddlecom.

should not have been received. But the gravamen of the action was the fraudulent concealment from the plaintiff of the condition of the horse. Want of knowledge in the plaintiff was the theory to be proved, and of course, if the plaintiff was bound to prove the negative, it was competent for the defendant to prove, under the general denial, the affirmative of the proposition. I think the evidence was properly received.

Had the referee, on the evidence, held the defendant liable, I should not have felt bound to interfere with the judgment. But while the evidence leans strongly in favor of the plaintiff, there is not that preponderance in his favor which will authorize us to disturb his finding. So much depends on the appearance and conduct of the witness, that it is never safe to interfere with a finding on a question of fact, unless it is so flagrantly unjust as to show partiality, corruption or incompetency on the part of the referee.

I am of the opinion, therefore, that the judgment of the referee should be affirmed.

[ONONDAGA GENERAL TERM, April 1, 1862. *Morgan, Mullin* and *Bacon,* Justices.]